## THE UNION BANK OF LOUISIANA v. GUICE, Executor.

Novation, like other contracts, derives its binding force from the intention of the parties. Where there was no intention to novate a debt, there can be no novation.

Where a mortgage was executed to secure the payment of bank-stock, subscribed for by the mortgagor under the provisions of a bank charter, which provided that each stockholder should be entitled to a loan to the amount of one-half of his stock, and the mortgage stipulated that the property mortgaged should stand hypothecated for any stock-loan so made, the statement in the act of one-half of the amount of the stock, as the *maximum* to be advanced, is sufficiently definite. Nor will such a mortgage be affected by any change in the evidence of the advances made; the fact that they were made and have not been satisfied, being sufficient to give it effect.

Where mortgages have been executed by the stockholders under their interpretation of the provisions of a bank charter, the court will be governed by the construction put upon it by the manner in which they have executed it, whatever might be its opinion, had the questions been brought up originally, on the refusal of the stockholders to execute the mortgages in the form actually adopted. C. C. 1951.

In cases of doubt, the interpretation must be against him who has contracted the obligation. C. C. 1952.

Where the directors of a corporation are empowered by its charter to make by-laws, not contrary to law, for the general administration of its affairs, the shareholders may be bound by provisions and rules beyond those actually contained in the charter.

APPEAL from the District Court of Concordia, *Curry*, J. *Stacy, Sparrow* and *Denis*, for the plaintiffs. *Frost, Prentiss* and *Finney*, for the appellant. The judgment of the court was pronounced by

ROST, J.* The legislature loaned to the plaintiffs the bonds of the State, for $7,000,000, and took as security for their reimbursement, a pledge of mortgage obligations subscribed by the respective stockholders, for amounts equal to those of the stock they held. It was provided by the charter of the bank that, after the sale of the state bonds, each stockholder should be entitled to a loan equal in amount to one-half of his stock. The acts of mortgage stipulated that the property affected for the security of the stock, was also to stand hypothecated for the stock loans, and that, in case of non-payment of such portions of the loan as might be required by the regulations of the bank, the stockholders should incur for those loans, the liabilities provided by the 24th section of the charter, in case of non-payment of loans on mortgage.

The defendant is the executor of one of the stockholders who failed to pay her instalments at the time fixed, and he resists the claim of the bank to be reimbursed the whole amount of the stock loan, with interest at the rate of ten per cent per annum, under the 24th section of the charter, on the following grounds: 1st,

---

*EUSTIS, C. J., did not sit on the trial of this case, being interested in it.

UNION BANK
v.
GUICE.

That the debt has been novated and the mortgage extinguished. 2d, That the mortgage is null under article 3277 of the Civil Code, because the specific sum for which it was given, is not mentioned. 3d, That the charter does not require the stockholders to give mortgages to secure the stock loans. 4th, That the whole debt is not due; the instalments of the stock loans are fixed by the charter, and the demand of the whole debt did not put the defendant in default. 5th, That the 24th section of the charter, authorizing the bank to charge interest at the rate of ten per cent, applies to ordinary mortgage loans, not to stock loans. 6th, That the claim is prescribed. The court below gave judgment in favor of the plaintiffs, and the defendant appealed.

There is nothing in the objection that the debt was novated. Novation, like other contracts, derives its binding force from the intention of the parties to make it. Here no such intention existed; the executor acknowledged the debt, and promised, in his fiduciary capacity, to pay arrears according to the regulations of the bank. Articles 984 and 985 of the Code of Practice, expressly authorized him to do so. The act of pledge given by him, in 1843, clearly shows that it never was in the contemplation of the parties to novate the debt. We view his written promise as a mere acknowledgment of it. The authorities cited in opposition to this view, are not applicable to this case. There the party acting in a fiduciary capacity, were sued personally, for having exceeded their powers; here the executor has not exceeded his powers, and the plaintiffs do not seek to make him personally liable.

The mortgage had not been given to secure a pre-existing obligation, and was not extinguished by the delivery of the bond of the testator to the executor. It had been taken by the bank, under article 3259 of the Civil Code, in the manner usual with merchants, to secure future advances. Those mortgages are not affected by any change in the evidence of the advances made; the facts that they were made and have not been satisfied, are sufficient to give them effect, provided the maximum to be advanced be stipulated in the act. Here the maximum was stated to be one-half of the amount of the stock; the sum was sufficiently definite.

We do not perceive how this claim could have been prescribed.

The other grounds of defence imply that the stockholders did not, at the beginning, give a correct interpretation to the charter, and contracted, in their acts of mortgage, obligations which it did not contemplate. What might have been our opinion in relation to some of the points submitted, if the questions they involve had been brought before us originally, on the refusal of the stockholders to give the mortgages in their present form, it is unnecessary to say. As the stockholders bound themselves of their own free will, we must hold them to be bound. The charter is a contract, and if the intent of the parties to it be doubtful, the construction put upon it by the manner in which it has been executed by both parties, or by one with the express or implied assent of the other, furnishes the safest rule for its interpretation; and, in cases of doubt, the interpretation must be against him who has contracted the obligation. Civil Code, arts. 1951, 1952.

The form of the acts of mortgage, and the various stipulations they contain, must have been prescribed by some regulation of the board, passed under the authority given by the 21st section of the charter.* Regulations of that kind may

---

*The 21st section of the charter of the bank, (stat. of 2 April, 1832), is in these words: "The deliberations of the board of directors of the said corporation shall have the same force and effect as the deliberations of the stockholders. The board of directors shall make

bind the corporators beyond the charter. "The effect of the power to make by-laws, is that the shareholders are bound by'a set of provisions and rules *beyond those actually contained in the charter*." Wordsworth, on Joint-stock Companies, p. 152, (29 Law Library). See also 2 Rob. 209. Moreover, the mortgages giving effect to the obligations created by the charter, as the stockholders understood it, have been given in pledge to the State to secure the reimbursement of its bonds; and any action of courts of justice having the tendency to diminish or impair those obligations, would enable the stockholders to commit a fraud.            *Judgment affirmed.*

---

regulations and ordinances for the general administration of the affairs of the bank, which they may alter or add to as the interest of the corporation shall require; and they shall likewise establish rules for conducting the affairs of the said bank, which they may, in like manner, alter or add to, as may be necessary for the service of the bank: provided, the said regulations, ordinances and rules shall not be contrary to law.